**In re GUARDIANSHIP OF Sharon KOWALSKI, Ward.**

**No. C6–86–176.**

Court of Appeals of Minnesota.

Aug. 19, 1986.

Review Denied Oct. 17, 1986.

M. Sue Wilson, Jane Binder, Stephanie Susene, Wilson & Pomerene, P.A., Minneapolis, for appellant Karen Thompson.

Jack R. Fena, Hibbing, and Harry A. Sieben, Jr., Grose, Von Holtum, Sieben & Schmidt, Ltd., Minneapolis, for respondent Donald Kowalski.

Thomas D. Hayes, Smith, Pringle & Hayes, Monticello, for respondent Sharon Kowalski.

Brian B. O'Neill, Amy B. Bromberg, Faegre & Benson, Minneapolis, for amicus curiae MN Civil Liberties Union.

Barbara J. Blumer, Minneapolis, for respondent Leisure Hills Nursing Home.

Heard, considered, and decided by LESLIE, P.J., and FOLEY and WOZNIAK, JJ.

## OPINION

WOZNIAK, Judge.

Karen Thompson appeals from the order of the probate division of the Sherburne County District Court denying her motion to find the guardian in contempt of court, remove the guardian, and remove the guardian's attorney as attorney in the ward's personal injury action. Thompson also alleged a violation by the guardian of the Minnesota Patients' Bill of Rights, Minn.Stat. § 144.651 (1984), and sought to conduct discovery; the probate court did not address these issues. We affirm.

## FACTS

On March 4, 1986, this court issued an opinion in a previous appeal in this matter. *In re Guardianship of Kowalski,* 382

N.W.2d 861 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. April 18, 1986). The facts are set forth at length in that opinion. Basically, Sharon Kowalski is a severely brain-damaged 27–year–old woman who has the mental capacity of a four- to six-year-old child. Her ability to communicate is severely limited and she often gives inconsistent responses to questions. She currently resides at a nursing home in Hibbing.

Thompson is a former roommate of Sharon's. Serious animosity exists between Thompson and the Kowalski family. There has been extensive litigation between the parties. In March of 1984, Thompson petitioned for appointment as Sharon's guardian. The probate court instead appointed Sharon's father, Donald Kowalski, as guardian, but gave Thompson equal visitation rights and equal access to medical and financial information and personnel.

There is considerable medical evidence that Thompson's visits had a detrimental effect on Sharon. Dr. George Cowan, a psychiatrist, recommended that Thompson be prohibited from visiting Sharon because Sharon enters a state of reactive depression after the visits. This view was concurred in by Dr. Steven Goff of the Nat Polinsky Memorial Rehabilitation Center and Dr. Julie Moller, Sharon's attending physician at the nursing home.

In May of 1985, Donald Kowalski moved for termination of Thompson's visitation. Thompson moved for Donald Kowalski's removal as guardian. In July 1985, the trial court ordered the appointment of Donald Kowalski confirmed and continued without limitation or condition, and terminated Thompson's right of access to medical and financial information and personnel. The court gave Donald Kowalski the power to determine Sharon's visitors on the condition that in doing so he consider Sharon's best interests, her wishes, the recommendations of medical and health care personnel, and the needs of the nursing home. Acting on the advice of Dr. William Wilson, the Kowalski family physician for a number of years and currently Sharon's attend-

ing physician, Donald Kowalski terminated Thompson's visitation.

Thompson appealed the court's July 1985 order. This court affirmed, holding that the trial court did not abuse its discretion in confirming Donald Kowalski as guardian when he is the most suitable and best-qualified among those available; that the trial court properly vested him with the power to determine visitation where medical evidence indicated that termination of Thompson's visitation was in the ward's best interest; and that the trial court did not err in establishing a guardianship instead of a conservatorship. *Kowalski*, 382 N.W.2d 861.

In December 1985, while the first appeal was still pending, Thompson brought a motion to find Donald Kowalski in contempt of court for terminating her visitation; to find Donald Kowalski in violation of the Minnesota Patients' Bill of Rights for terminating Thompson's visitation; to order that Thompson be allowed to conduct discovery; to remove Donald Kowalski as guardian and appoint Thompson or a "neutral party" in his place; to order that certain medical re-evaluations sought by Thompson be performed on Sharon; and to remove Sharon's current attorney and order the guardian to appoint "independent counsel" to represent Sharon in her personal injury action.

The trial court did not rule on the Patients' Bill of Rights or discovery issues and denied Thompson's motion in all other respects. Thompson appeals.

## ISSUES

1. Did the trial court abuse its discretion in refusing to find Donald Kowalski in contempt of court for denying Karen Thompson's visitation?

2. Is there any basis for finding the guardian in violation of the Minnesota Patients' Bill of Rights?

3. Did the trial court abuse its discretion in refusing to remove Donald Kowalski as guardian?

4. Is appellant entitled to conduct further discovery in this matter?

5. Did the trial court err in determining that no conflict of interest arises from the same attorney representing the ward in her personal injury action and the guardian?

6. Did the trial court abuse its discretion in choosing the facility at which the ward is to be re-evaluated?

## ANALYSIS

■ 1. Thompson argues that Donald Kowalski is in contempt of court for his failure to allow her to have visitation with Sharon. The July 23, 1985 order of the probate court provides that Donald Kowalski, as guardian, has the power to determine who may visit Sharon, and that he

> shall consider, regarding all visitation decisions, that the primary consideration is the best interest of the ward and any reliably expressed wishes of the ward, both of which may change from time to time. The guardian shall also consider regarding visitation, the recommendations of medical and health care personnel and the needs and desires of the institution wherein the ward resides.

There is absolutely no evidence in the record that Donald Kowalski has not complied with the court's order.

The order directs Donald Kowalski to consider the "reliably expressed wishes of the ward" in making visitation decisions. Thompson claims that Sharon has expressed a desire to have visitation from her. According to Donald Kowalski, Sharon has never told him that she wants Thompson to visit, and has told him on one occasion that she does not want her to visit. Sharon often gives inconsistent responses to questions asked of her. In light of the conflicting evidence as to Sharon's wishes and her tendency to give inconsistent responses, it cannot be argued that Donald Kowalski ignored any "reliably expressed" wishes of Sharon in terminating Thompson's visitation.

The July 23 order further directs Donald Kowalski to consider "the recommenda-

tions of medical and health care personnel and the needs and desires of the institution wherein the ward resides." All four of Sharon's attending physicians have stated that Thompson's visits were having a negative effect on Sharon's improvement. The nursing home has not expressed an opinion.

Finally, this court has already held that Donald Kowalski's termination of Thompson's visitation was in Sharon's best interests.

> Quietude is essential to a patient's recovery or improvement and in the patient's best interest. The record indicates certain visitation has an unsettling effect on the ward. A pattern has developed indicating Thompson's visits may produce significant responses from the ward, but the ward regularly experiences depression and moodiness following Thompson's visits. *Medical testimony supported termination of Thompson's visitation as in the ward's best interest.*

*In re Guardianship of Kowalski,* 382 N.W.2d at 866 (emphasis added). This language is not, as Thompson argues, mere dicta. At issue in the previous appeal was whether the guardian's powers should be limited to those of a conservator. The crux of this issue was whether regulation of visitation by the guardian was necessary to provide for Sharon's needs and least restrictive of her rights. In deciding this issue, it was necessary for this court to determine whether the record supported a finding that the termination of Thompson's visitation was in Sharon's best interests. The above-quoted language is therefore not dicta; it was necessary to this court's determination of the issue. In light of this previous determination by this court, Thompson's argument that Donald Kowalski is in contempt of court for denying her visitation is without merit.

■ 2. Thompson argues that Donald Kowalski has violated the Minnesota Patients' Bill of Rights, Minn.Stat. § 144.651 (1984), by denying her visitation. This court has already determined that the Patients' Bill of Rights, which imposes duties upon health care facilities and not upon

guardians, is not applicable to this matter. *In re Guardianship of Kowalski,* 382 N.W.2d at 866 n. 1.

■ 3. Thompson argues that Donald Kowalski should be removed as guardian because, by denying Thompson visitation, he is not acting in Sharon's best interest. As discussed above, however, and as previously stated by this court, the evidence indicates that denial of Thompson's visitation *is* in Sharon's best interests. Furthermore, this court reviewed the same evidence, including the evidence of the effect of Thompson's visits on Sharon, in determining whether the court acted properly in appointing Donald Kowalski as guardian. At that time, this court was aware that, immediately after being appointed guardian, Donald Kowalski had terminated Thompson's visitation. This court held that the appointment of Donald Kowalski as guardian was in Sharon's best interests.

4. Thompson argues that she is entitled to conduct full discovery in order to investigate her claim that Donald Kowalski is violating the Patients' Bill of Rights. As discussed above, this court has already held that the Patients' Bill of Rights does not apply to this matter. Even if it did, Thompson's request does not comply with Minn.R.Civ.P. 27.02 and there is no finding by the court that the perpetuation of testimony is necessary to avoid a failure or delay of justice.

5. Thompson argues that it is an impermissible conflict of interest for the same attorneys to represent Donald Kowalski as guardian in the probate litigation and simultaneously to represent Sharon in her personal injury action.

On February 11, 1985, in response to a complaint from Thompson, the Director of Lawyers' Professional Responsibility determined that discipline was not warranted in this matter. In its January 3, 1986 order, the probate court found that there was no evidence justifying the removal of Donald and Sharon Kowalski's attorneys on these grounds. Subsequently, in response to a complaint from M. Sue Wilson, Thompson's attorney, the Director of Lawyers' Professional Responsibility again determined that discipline was not warranted stating:

> Complainant's allegations on their face do not present an inherent conflict of interest. Accordingly, whether an actual conflict exists is dependent upon the independent facts and circumstances of respondent's representations in these two matters. * * * Due to its familiarity with the unique facts surrounding this matter, the district court is in a much better position to address and consider complainant's conflict allegations. Accordingly, the Director is deferring to the decision of the district court * * *.

■ The director's decision that the facts of this case on their face do not present an inherent conflict of interest is correct. The guardianship statute imposes upon the guardian the duty to collect all claims on behalf of the ward, institute suit on behalf of the ward, and to represent the ward in any court proceeding. Minn.Stat. § 525.56, subd. 4(3) (1984).

There is no indication of a conflict of interest arising out of the unique facts of this case. Thompson has made no showing that opposing counsel, in his capacity as attorney for the guardian, is not acting in the best interests of the ward; this court has already determined that termination of Thompson's visitation was in the ward's best interest. Thompson has also failed to show that opposing counsel has failed to zealously prosecute the personal injury case.

■ 6. In her motion before the trial court, Thompson moved the court to order that Sharon be immediately evaluated by the Sister Kenny Institute in Minneapolis and by a division of a University of Minnesota program in human sexuality specializing in the treatment of disabled persons. The trial court instead ordered that she undergo periodic evaluations at the Polinsky Rehabilitation Center in Duluth. The trial court did not abuse its discretion in refusing to order Sharon transported to the Twin Cities for further evaluations.

Respondent requests that the costs of this appeal be assessed against Thompson. We decline to do so.

## DECISION

The trial court is affirmed in all respects.