In the Matter of the GUARDIANSHIP AND CONSERVATORSHIP OF Harold Oliver LARSON, an Alleged Incapacitated Person.

**Harold Oliver LARSON, an Alleged Incapacitated Person,
Appellant,**

v.

**Warren R. LARSON, Appellee.**

Civ. No. 940167.

Supreme Court of North Dakota.

April 13, 1995.

John J. Gosbee, of Gosbee Law Firm, Mandan, for appellant.

Thomas B. Bair, of Bair, Bormann & Bair, Mandan, for appellee. Appearance by Warren R. Larson.

Vande Walle, Chief Justice.

Harold Oliver Larson appealed from an order of the county court appointing his brother, Warren Larson, temporary guardian and conservator for Harold Larson and from a subsequent order appointing William Chaussee permanent guardian and conservator for Harold Larson. We hold the trial court did not commit error in making either the temporary or the permanent appointment of a guardian and conservator, and we affirm.

Harold Larson, age 83, suffered an apparent stroke in his Mandan home on November 28, 1993. He was taken to St. Alexius Hospital in Bismarck and was transferred on December 9, 1993 to a nursing home in Mandan. Harold Larson has no living parent, spouse, or children.

Warren Larson discovered that Harold Larson, after being transferred from the hospital to a Mandan nursing home, wrote a check payable to "cash" in the amount of $4,000 and gave it to a friend, Lillian Ruff. Warren Larson later discovered all of the locks had been changed on Harold Larson's home, and, when questioned, Harold Larson told Warren Larson, "he didn't know anything about it." Warren Larson made inquiry of a local locksmith who said he changed

the locks to Harold Larson's home on December 31, 1993, at the request of Lillian Ruff and attorney John Gosbee. Warren Larson then filed a petition requesting the county court to appoint a permanent guardian and conservator for Harold Larson and to appoint Warren Larson temporary guardian and conservator on an emergency basis. Following an *ex parte* hearing, the trial court granted Warren Larson's request for the temporary appointment. After conducting a full evidentiary hearing, the county court entered an order appointing public administrator, William Chaussee, permanent guardian and conservator for Harold Larson.

Harold Larson asserts his rights were violated when the court appointed Warren Larson temporary guardian and conservator without giving Harold Larson or Gosbee notice and opportunity to be heard.[1] Warren Larson attempted to notify Gosbee even though Warren Larson testified he had no knowledge whether Harold Larson had retained Gosbee to represent him. Warren Larson attempted to contact Gosbee by phone shortly before the hearing. When he was unsuccessful, he left a message on Gosbee's answering system asking Gosbee to call him.

■ Under Subsection 30.1–28–10(1)(a), N.D.C.C., the court has authority to appoint a temporary guardian "without notice" if "an emergency exists." Under Subsection 30.1–29–08(2), N.D.C.C., the court, "after preliminary hearing and without notice to others," can use a conservator to preserve the property of the person to be protected while a petition for appointment of a conservator or other protective order is pending. Although notice of the proceedings for appointment of a temporary guardian and conservator was not statutorily required, Warren Larson attempted to notify Gosbee by phone. Under the circumstances, Warren Larson was required to do no more.

■ At the *ex parte* hearing, prior to the court's appointment of Warren Larson as temporary guardian and conservator, Warren Larson introduced evidence that: (1) after Harold Larson's stroke and placement in the nursing home, Harold Larson wrote a check payable to cash for $4,000 and gave it to Lillian Ruff, without getting any accounting of the money; (2) Harold Larson had no recollection of authorizing a change of locks on his home; and (3) Harold Larson was medically diagnosed as being mentally confused and suffering from dementia. The trial court specifically found that appointment of a temporary guardian and conservator was necessary because Harold Larson "is susceptible to influence from third parties which may be detrimental to him and to his estate." We conclude that on the basis of the evidence before it, the trial court did not err in temporarily appointing a guardian and conservator for Harold Larson after conducting the *ex parte* hearing.

■ The court subsequently held a full evidentiary hearing before appointing a permanent guardian and conservator for Harold Larson. During that hearing, a videotape and still photographs were introduced showing the dirty conditions and extreme clutter in Harold Larson's home. Harold Larson asserts this evidence was obtained without his consent and without a warrant, in violation of his Fourth Amendment rights against unlawful search and seizure under the federal constitution, made applicable to the states by the Fourteenth Amendment. He urges us to apply the exclusionary rule to these proceedings, thereby eliminating the use of the videotape and photographs as evidence of Harold Larson's need for a guardian and conservator.

In support of his argument that the exclusionary rule should be applied to these proceedings, Harold Larson cites *Conservatorship and Estate of Tedesco,* 17 Cal.App.4th 758, 22 Cal.App.4th 662, 27 Cal.App.4th 1274, 21 Cal.Rptr.2d 763 (1 Dist.1993), review granted and opinion superseded by *Conservatorship of Tedesco,* 860 P.2d 1181, 24 Cal. Rptr.2d 235 (1993), and judgment affirmed by *Conservatorship of Susan T.,* 8 Cal.4th

---

**1.** *Ex parte* orders are not appealable, but an order made after hearing which vacates or refuses to set aside the *ex parte* order is appealable. Section 28–27–02(7), N.D.C.C. We conclude the order appointing the permanent guardian and conservator, from which an appeal was also taken, is a refusal to set aside the *ex parte* order.

1005, 36 Cal.Rptr.2d 40, 884 P.2d 988 (1994). In *Tedesco,* the California Court of Appeals for the First District ruled that the exclusionary rule applies to involuntary conservatorship proceedings. The court specifically held that photographic evidence obtained by a social worker who entered a conservatee's house in violation of the Fourth Amendment must be excluded as evidence in the proceedings to appoint a conservator. However, in December 1994, subsequent to the hearing in this case for appointment of a permanent guardian and conservator for Harold Larson, the California Supreme Court reversed the lower court, and held that the exclusionary rule was not applicable to conservatorship proceedings. *Conservatorship of Susan T., supra,* 36 Cal.Rptr.2d at 49, 884 P.2d at 997. Harold Larson has cited no other case authority to support applying the exclusionary rule here, and we are unpersuaded by his arguments for applying the rule under the circumstances in this case.

Subsection 30.1–28–04(2)(b), N.D.C.C., states the conditions under which the court is authorized to appoint a guardian:

"2. At a hearing held under this chapter, the court shall:

\* \* \* \* \* \*

"b. Appoint a guardian and confer specific powers of guardianship only after finding in the record based on clear and convincing evidence that:

"(1) The proposed ward is an incapacitated person;

"(2) There is no available alternative resource plan that is suitable to safeguard the proposed ward's health, safety, or habilitation which could be used instead of a guardianship;

"(3) The guardianship is necessary as the best means of providing care, supervision, or habilitation of the ward; and

"(4) The powers and duties conferred upon the guardian are appropriate as the least restrictive form of intervention consistent with the ability of the ward for self-care."

In determining that Harold Larson is an incapacitated person in need of a guardian, the trial court made the following specific findings:

"Over the past several years the proposed ward has a history of gradual decline. It is clear from the report of the clinical psychologist, the report of the visitor, the testimony in Court, and the exhibits received that the proposed ward has loss of abilities, such as, memory, judgment, planning, abstract thinking, intellectual skills, and changes in personality and behavior. He is suffering from dementia.

\* \* \* \* \* \*

"The evidence in this case also shows that the proposed ward is sometimes confused about what state he is in; what city he is in; how old he is; how much money he has; and, what his occupation was.

\* \* \* \* \* \*

"A guardianship is necessary in order to insure the health and safety of the proposed ward. As the evidence demonstrated, an alternative to a guardianship will not be feasible because the proposed ward will refuse services and be uncooperative."

Harold Larson asserts the court's finding that he is an incapacitated person in need of a guardian is clearly erroneous.

■ We apply the clearly erroneous standard under Rule 52(a), N.D.R.Civ.P., when reviewing findings in a guardianship proceeding. *Matter of Norman,* 524 N.W.2d 358 (N.D.1994). A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Matter of Guardianship of Nelson,* 519 N.W.2d 15 (N.D.1994).

■ Dr. Edward Kehrwald is a clinical psychologist at St. Alexius Hospital. After conducting an extensive examination, Dr. Kehrwald concluded Harold Larson is confused and suffers from dementia caused by "mild infarcts" or "a type of alzheimers." He determined Harold Larson has difficulty with verbal and non-verbal reasoning, verbal memory, on-going repetitive motor activity, and general orientation. Dr. Kehrwald con-

cluded that Harold Larson cannot be trusted to make competent decisions on his own and that Harold Larson's loss of functioning due to dementia leaves Harold Larson unable to manage issues pertaining to finances, health, and safety.

Joann Laine, the Director of Social Services for Medcenter One in Mandan, testified about her observations of Harold Larson at the nursing home. She testified that Harold Larson's clothes at his personal residence were soiled and "unkept" to the extent they were unwearable. She said that Harold Larson has incontinent episodes during the night and needs to be prompted to change his clothes. She also testified that Harold Larson needs prompting to go to meals and needs assistance in eating, such as having his meat cut and his bread buttered. She also testified about two instances of Harold Larson not knowing where he was. On one occasion, while at the nursing home, Harold Larson thought he was "in the middle of South Dakota" and he asked for a map "so he could find his way out of South Dakota." She testified that Harold Larson was released from the nursing home for a day, and on that occasion he fell and was hospitalized with a broken wrist and bruises. Harold Larson told Joann he fell while walking to the bank "to withdraw $2,000 ... for pocket change."

Warren Larson also testified at the hearing. Warren Larson said during the past several years, he noticed Harold Larson's personal hygiene "was deteriorating pretty badly." Warren Larson testified that during the summer prior to the hearing, Harold Larson was arrested in Minnesota for driving without a valid license and for driving 27 miles per hour in the passing lane of a four-lane highway. On that occasion, Harold Larson telephoned Warren Larson requesting a ride from Minneapolis back to Mandan. Warren Larson testified he discussed financial matters with Harold Larson at the nursing home and that Harold Larson "didn't have any idea" about his bank balance or the amount of income he had. Warren Larson also testified that during the past January, Harold Larson told Warren Larson "he was going to have two wives" and that "he was a

millionaire working on his third million." The evidence shows Harold Larson's actual net worth is about $190,000.

Having reviewed the record in this case, we are not left with a definite and firm conviction the trial court made a mistake in finding Harold Larson is incapacitated and in need of a guardian. There is ample evidence to support the court's findings, and they are not clearly erroneous.

Harold Larson has raised other issues which we consider devoid of merit and not warranting explanation or discussion by this court.

Orders affirmed.

SANDSTROM, NEUMANN, LEVINE and MESCHKE, JJ., concur.