2015 ND 191

**In the Matter of the GUARDIANSHIP OF the Person and Conservatorship of the Estate of B.K.J., an incapacitated person,**

**J.W., co-guardian, Petitioner and Appellee**

**v.**

**B.K.J., First International Bank, Conservator, and Guardian and Protective Services, Inc., co-guardian, Respondents**

**B.K.J., Appellant.**

No. 20140446.

Supreme Court of North Dakota.

July 30, 2015.

Allyson M. Hicks (argued) and Scott T. Solem (appeared), Beulah, ND, for petitioner and appellee.

Gene W. Doeling Jr. (argued) and Jonathan L. Voigt (on brief), Fargo, ND, for respondent and appellant B.K.J. Guardianship/Conservatorship of B.K.J.

McEVERS, Justice.

[¶ 1] B.K.J. appeals from a district court order appointing J.W. and Guardian and Protective Services, Inc. ("G.A.P.S"), as her co-guardians. We affirm, concluding the district court did not abuse its discretion in appointing J.W. and G.A.P.S. as B.K.J.'s co-guardians.

I

[¶ 2] B.K.J.'s niece, J.W., petitioned for the appointment of a guardian and a conservator for B.K.J. on the grounds B.K.J. suffered mild to moderate Alzheimer's disease and dementia and had shown decline in her ability to care for herself and her finances. Particularly, J.W. asserted B.K.J. had over $600,000 in unpaid taxes, interest, and penalties and had allegedly been taken advantage of monetarily by certain friends and family members. Specifically, the petition sought to appoint J.W. as B.K.J.'s guardian and conservator. After a hearing for emergency guardianship, the district court appointed J.W. and G.A.P.S. as emergency co-guardians to B.K.J. pending further hearing. The district court appointed a physician and a visitor to examine B.K.J., and an attorney to represent B.K.J. as guardian ad litem. A hearing was held on the petition. At the beginning of the hearing, the parties stipulated that a guardianship is necessary for B.K.J., and that she did not oppose the appointment of First International Bank as her conservator. The court-appointed physician, the court-appointed visitor, B.K.J.'s guardian ad litem, and others testified regarding the extent of B.K.J.'s incapacity, the necessity of a guardian, and who should be appointed as B.K.J.'s guardian. B.K.J. testified that she did not want J.W. appointed as her guardian and nominated two of her friends, F.C. and T.C., to be appointed as her co-guardians. The district court appointed First International Bank as B.K.J.'s conservator and appointed J.W. and G.A.P.S. as B.K.J.'s co-guardians, concluding the evidence established

they were the proper and best qualified persons to serve as her guardians and represent the best interests of B.K.J. B.K.J. appealed.

## II

[¶ 3] On appeal, B.K.J. argues the district court abused its discretion by misinterpreting and misapplying the law when it did not appoint F.C. and T.C., the individuals whom she nominated to be her co-guardians, because her preference should have taken priority under N.D.C.C. § 30.1–28–11(3)(a).

[¶ 4] The standard of review applied in guardianship proceedings is as follows:

Although we apply the clearly erroneous standard under N.D.R.Civ.P. 52(a) when reviewing findings of fact in a guardianship proceeding, *see, e.g., Matter of Guardianship of Larson*, 530 N.W.2d 348, 351 (N.D.1995); *Matter of Guardianship of Nelson*, 519 N.W.2d 15, 17 (N.D.1994); *Matter of Guardianship of Renz*, 507 N.W.2d 76, 77 (N.D.1993), courts in Uniform Probate Code jurisdictions apply the abuse of discretion standard when reviewing a trial court's selection of a guardian and conservator. *See, e.g., In re Guardianship of Kowalski*, 382 N.W.2d 861, 864 (Minn.Ct.App. 1986); *Matter of Guardianship of Nelson*, 204 Mont. 90, 663 P.2d 316, 318 (1983); *In re Guardianship of Blare*, 1999 SD 3, ¶ 9, 589 N.W.2d 211; Peter G. Guthrie, Annotation, *Priority and Preference in Appointment of Conservator or Guardian for an Incompetent*, 65 A.L.R.3d 991, 995 (1975). A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support the finding, or if, on the entire record, we are left with a definite and firm conviction a mistake has been made. *In re E.G.*, 2006 ND

126, ¶ 7, 716 N.W.2d 469. A court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, its decision is not the product of a rational mental process leading to a reasoned determination, or it misinterprets or misapplies the law. *City of Bismarck v. Mariner Constr., Inc.*, 2006 ND 108, ¶ 8, 714 N.W.2d 484.

*In re Guardianship and Conservatorship of Thomas*, 2006 ND 219, ¶ 7, 723 N.W.2d 384. If a statute requires express findings by the district court, failure to make such findings may constitute reversible error when the record does not reflect whether the issue was considered. *See Schempp–Cook v. Cook*, 455 N.W.2d 216, 217–18 (N.D.1990). When express findings are not required by statute, the fact-finder must consider all applicable factors. *See Mertz v. Mertz*, 439 N.W.2d 94, 97 (N.D. 1989).

[¶ 5] Under N.D.C.C. § 30.1–28–04(2)(c), at a hearing regarding establishing a guardianship, the district court shall:

Appoint a guardian and confer specific powers of guardianship only after *finding* in the record based on clear and convincing evidence that:

(1) *The proposed ward is an incapacitated person;*

(2) There is no available alternative resource plan that is suitable to safeguard the proposed ward's health, safety, or habilitation which could be used instead of a guardianship.

(3) The guardianship is necessary as the best means of providing care, supervision, or habilitation of the ward; and

(4) The powers and duties conferred upon the guardian are appropriate as the least restrictive form of intervention consistent with the ability of the ward for self-care.

(Emphasis added.) Here, the district court found, by clear and convincing evidence, that the parties had stipulated to the fact that B.K.J. is an incapacitated person and that the remaining elements under N.D.C.C. § 30.1–28–04(2)(c)(2)–(4) had been satisfied warranting appointment of a guardian. B.K.J. does not challenge the district court's findings under N.D.C.C. § 30.1–28–04(2)(c) governing the district court's determination that a guardianship is necessary.

[¶ 6] Under N.D.C.C. § 30.1–28–11(1), "[a]ny competent person or a designated person from a suitable institution, agency, or nonprofit group home may be appointed guardian of an incapacitated person." The district court shall appoint the incapacitated person's most recent nomination for a durable power of attorney as the person's guardian, "[u]nless lack of qualification or other good cause dictates the contrary." N.D.C.C. § 30.1–28–11(2). B.K.J. nominated J.W. as her power of attorney, but revoked that nomination in 2014. When N.D.C.C. § 30.1–28–11(2) does not apply, the order of priority a district court must consider for appointing a guardian is as follows:

a. *A person nominated by the incapacitated person prior to being determined to be incapacitated,* when nominated by means other than provided in subsection 2, *if* the incapacitated person is fourteen or more years of age *and, in the opinion of the court, acted with or has sufficient mental capacity to make an intelligent choice.*

b. The spouse of the incapacitated person.

c. An adult child of the incapacitated person.

d. A parent of the incapacitated person, including a person nominated by will or other writing signed by a deceased parent.

e. Any relative of the incapacitated person with whom the incapacitated person has resided for more than six months prior to the filing of the petition.

f. *Any relative or friend who has maintained significant contacts with the incapacitated person or a designated person from a volunteer agency.*

g. A nonprofit corporation established to provide guardianship services; provided, that the corporation does not provide direct care to incapacitated persons. The corporation shall file with the court the name of an employee, volunteer, or other person from the corporation who is directly responsible for the guardianship of each incapacitated person, and shall notify the court in the event the person for any reason ceases to so act, or if a successor is named.

h. Any appropriate government agency, including county social service agencies, except as limited by subsection 1.

i. A person nominated by the person who is caring for or paying benefits to the incapacitated person.

N.D.C.C. § 30.1–28–11(3) (emphasis added).

[¶ 7] In applying the order of priority listed under N.D.C.C. § 30.1–28–11(3), the district court is further governed by N.D.C.C. § 30.1–28–11(4), which provides:

With respect to persons having equal priority, the court shall select the one it deems *best qualified* to serve. The court, *acting in the best interest of the incapacitated person,* may pass over a

person having priority and appoint a person having a lower priority.

(Emphasis added.)

[¶ 8] B.K.J. argues the district court abused its discretion in appointing J.W. because her preference to appoint F.C. and T.C. as co-guardians should have taken priority. Specifically, B.K.J. contends the district court misinterpreted and misapplied the law when it (1) failed to find, under N.D.C.C. § 30.1–28–11(3)(a), that B.K.J. had insufficient mental capacity to make an intelligent choice to justify appointing J.W. and G.A.P.S. over others with higher priority, and (2) failed to find, under N.D.C.C. § 30.1–28–11(4), that it was in the best interests of B.K.J. to pass over persons having higher priority.

[¶ 9] We have outlined our standard of review for interpreting a statute:

Interpretation of a statute is a question of law, fully reviewable on appeal. *When interpreting a statute, this Court* seeks to ascertain the intent of the legislature by giving the statute's language its plain, ordinary, and commonly understood meaning. A statute's language must be interpreted in context, and this Court attempts to give meaning and effect to every word, phrase, and sentence.

*Matter of S.E.*, 2012 ND 168, ¶ 11, 820 N.W.2d 389 (citations and quotation marks omitted) (citing N.D.C.C. §§ 1–02–03 and 1–02–38(2)).

[¶ 10] B.K.J.'s argument that the district court erred by failing to make specific findings is a misinterpretation of N.D.C.C. §§ 30.1–28–11(3)(a) and 30.1–28–11(4). Contrary to B.K.J.'s argument, N.D.C.C. § 30.1–28–11(3)(a) does not require the district court to make a specific finding that a person is of insufficient mental capacity to make an intelligent choice regarding appointing a guardian. While it might have been helpful to have a specific

finding, we will not reverse so long as the district court did not abuse its discretion in appointing a guardian. *See Thomas*, 2006 ND 219, ¶ 7, 723 N.W.2d 384 (applying "the abuse of discretion standard when reviewing a trial court's selection of a guardian"). Under N.D.C.C. § 30.1–28–11(3), the district court must first consider an incapacitated person's preference for appointment under subsection (a) and *may* apply that section to appoint "a person nominated by the incapacitated person prior to being determined to be incapacitated ... *if* the incapacitated person is fourteen or more years of age and, *in the opinion of the court, acted with or has sufficient mental capacity* to make an intelligent choice." N.D.C.C. § 30.1–28–11(3)(a) (emphasis added). In other words, N.D.C.C. § 30.1–28–11(3)(a) is not applicable unless, in the district court's opinion, the incapacitated person acted with or has sufficient mental capacity to make an intelligent choice. Here, it is clear the district court was not of the opinion B.K.J. acted with or has sufficient mental capacity to make an intelligent choice. Rather, the district court's findings noted B.K.J. testified that she did not trust J.W. anymore, but was unable to recall why she distrusted J.W., specifically finding, "[B.K.J.] seemed confused by why she was upset with [J.W.] and [could] not provide a logical reason." The record reflects the district court considered subsection (a) in making its determination.

[¶ 11] B.K.J. relies on *Thomas*, 2006 ND 219, 723 N.W.2d 384, to support her argument that the district court abused its discretion. B.K.J.'s reliance on *Thomas* is misplaced. This Court did not address in *Thomas* whether the district court is required to make specific findings when applying the statutory priorities under N.D.C.C. § 30.1–28–11. As previously noted, N.D.C.C. § 30.1–28–11(4) provides:

"The court, acting in the best interest of the incapacitated person, may pass over a person having priority and appoint a person having a lower priority." There is no express requirement to make a specific finding when the district court passes over a person with higher priority where other findings and evidence are sufficient to explain the court's reasons. As we previously concluded, B.K.J.'s nominations of F.C. and T.C. do not take priority under N.D.C.C. § 30.1–28–11(3) because the district court was not of the opinion that B.K.J. had sufficient mental capacity to make an intelligent choice, rendering subsection (a) inapplicable. Even if subsection (a) did apply, the district court's conclusion that the co-guardians appointed "are best qualified to serve" and "represent [B.K.J.'s] best interests" is sufficient to satisfy the statutory requirements of N.D.C.C. § 30.1–28–11(4).

[¶ 12] In its order appointing B.K.J.'s guardians and conservator, the district court concluded:

14. Based on the report and testimony of the court appointed physician, visitor, and guardian ad litem, and other testimony and evidence before the Court, [J.W.] and Guardian and Protective Services, Inc., Bismarck, North Dakota, are the proper and *best qualified persons* to serve as co-guardians of [B.K.J.]. The Court believes that under N.D.C.C. § 30.1–28–11, [J.W.] and GaPS are *best qualified to serve and represent [B.K.J.'s] best interests.*

(Emphasis added.)

Under N.D.C.C. § 30.1–28–11(3)(f), the district court may appoint "[a]ny relative or friend who has maintained significant contacts with the incapacitated person...." It is apparent by the language of the district court's order that J.W., F.C., and T.C. were viewed as having equal priority. "With respect to persons having

equal priority, the court shall select the one it deems best qualified to serve." N.D.C.C. § 30.1–28–11(4). We note G.A.P.S. would have lower priority under subsection (g), as a non-profit organization that provides guardianship services. N.D.C.C. § 30.1–28–11(3)(g). However, we need not address G.A.P.S.'s lower priority, as it was selected as a co-guardian, in combination with J.W., who had equal priority with F.C. and T.C.

[¶ 13] The district court concluded J.W. and G.A.P.S. were best qualified to serve as B.K.J.'s guardian. The district court's detailed findings based on the testimony presented at the hearing support its decision.

[¶ 14] Dr. Rodney Allen Swenson, who is the court-appointed physician and a clinical neuro-psychologist, testified that he met with and tested B.K.J. Dr. Swenson diagnosed B.K.J. as having a dementing syndrome, primarily of the Alzheimer's type, with executive impairment. Dr. Swenson stated he believed B.K.J. is incapacitated and needed to be in an assisted living type of setting, where she would receive twenty-four-hour care and supervision, at a minimum.

[¶ 15] Stacy Arnegard, a licensed social worker with McKenzie County Social Services and the court-appointed visitor, testified she visited B.K.J. four separate times and performed a mini-mental test on B.K.J. each time. Arnegard said it is common for a person in B.K.J.'s situation to be resentful towards the family member that steps up and starts caring for her in her later years. Arnegard testified she has no concerns with J.W. being appointed as B.K.J.'s guardian and sees "her as a genuine person looking out for somebody's needs." Arnegard did not believe F.C. would be a feasible option for B.K.J.'s guardian because she perceived F.C. to not be insightful, by downplaying B.K.J.'s cog-

nitive impairments, and also considering speculation regarding financial issues. Specifically, Arnegard stated that, during the first two visits with B.K.J., F.C. was present and interfered by answering questions for B.K.J. and minimizing B.K.J.'s impairments. Arnegard believed J.W. and G.A.P.S. would be the best co-guardians for B.K.J.

[¶ 16]   Charles Isakson, B.K.J.'s guardian ad litem, testified that he met with B.K.J. at her home and noticed short-term memory deficits. Isakson was concerned about the availability of home care in her remote location, especially in the winter. Isakson stated J.W. is "probably the most prepared and organized guardian or emergency guardian [he had] ever dealt with." Isakson also testified:

> [J.W. is] very efficient in what she's doing, and I have no question about her—the fact that she cares very much for [B.K.J.], and wants to do the best she can to provide guardianship or conservatorship services for her. They've been friends, in a family relationship, for many years that has weakened at this point, based on this proceeding, I think. But, I think she's done a very good job.

Although B.K.J. has expressed to Isakson that she does not trust J.W., she could not give any specifics as to why. Isakson thought a co-guardianship between J.W. and G.A.P.S. would be appropriate. Isakson believed T.C. would not be an appropriate guardian because "he really doesn't get it" and he is "downplaying what services she needs."

[¶ 17]   Judy Vetter, the administrator for G.A.P.S. testified B.K.J.'s home is in a remote location and that B.K.J. would prefer to be in an assisted living facility, as opposed to receiving in-home care. Vetter found J.W. to be very conscientious, involved, and "on top of what's actually happening at [B.K.J.'s] home, and the things that need to be addressed." Vetter testified that B.K.J. has voiced negative opinions about J.W., but "that seems to be more because of [F.C.'s] involvement or what she's telling [B.K.J.]."

[¶ 18]   J.W., B.K.J.'s emergency guardian and niece, testified she became concerned about B.K.J. when she realized B.K.J. owed over $600,000 in unpaid taxes, interest, and penalties, after a grand-niece allegedly stole from B.K.J.'s financial accounts. Although B.K.J. is angry at her, J.W. is still able to keep B.K.J.'s bills paid, help with her taxes, provide communication with other family members, attempt to communicate important information to B.K.J., and make medical appointments for B.K.J. J.W. believed she was best suited to be B.K.J.'s guardian because B.K.J.'s family members believe it is important to have a family component to the guardianship, but no other family members are willing and able to serve as a guardian to B.K.J.

[¶ 19]   A first cousin to B.K.J., testified that he believed it was best to appoint a family member as B.K.J.'s guardian, specifically J.W., because she has done a good job and did things that needed to be done, especially with the unpaid taxes.

[¶ 20]   T.C., a friend of B.K.J.'s whom she nominated at the hearing to be her co-guardian, testified he lives in Fargo, sees B.K.J. once a year, and calls her every two months. However, T.C. said he would try to visit B.K.J. monthly if he were appointed to be her guardian. T.C. stated he did not necessarily agree with the physician's diagnosis that B.K.J. suffers from an Alzheimer type of disease because he has not witnessed any such issues with her.

[¶ 21]   F.C., a friend of B.K.J.'s whom she nominated at the hearing to be her other co-guardian, testified that she has known B.K.J. for fifty-five years, she lives seven miles away from B.K.J., she visits

B.K.J. two to three times per week, and she calls B.K.J. five or six times per day on the telephone. F.C. stated she accepted $170,000 from B.K.J. to pay off land F.C. and her daughter-in-law owned. F.C. testified she gave four unprescribed Wellbutrin tablets to B.K.J. because she thought B.K.J. was depressed. Earlier in the hearing, Dr. Swenson testified that some patients taking Wellbutrin can develop seizures, so patients need to be monitored closely after starting the medication.

[¶ 22] B.K.J. testified that she does not want J.W. to be her guardian because J.W. is dishonest and B.K.J. no longer trusts her. However, B.K.J. could not remember why she no longer trusts J.W. B.K.J. preferred F.C. and T.C. be appointed as her co-guardians.

[¶ 23] In sum, numerous individuals, some who know B.K.J. personally and some appointed to work with B.K.J. through this proceeding, testified J.W. and G.A.P.S. would be the best guardians for B.K.J. The guardian ad litem expressed concern over F.C. and T.C. being appointed as guardians to B.K.J. for various reasons. As such, the district court's conclusion that J.W. and G.A.P.S. are best qualified to serve and represent B.K.J.'s best interests is supported by the record and not an abuse of discretion. Because we have concluded the district court did not abuse its discretion in applying the priorities set forth in N.D.C.C. § 30.1-28-11(3), we need not address J.W.'s argument that B.K.J.'s nominations do not take priority because the nominations were not made prior to the parties' stipulation that B.K.J. was incapacitated.

III

[¶ 24] B.K.J. argues the district court abused its discretion, by misapplying the law, when it orally stated at the conclusion of the hearing that it believed "the statute dictates that [J.W.] be appointed as a family member." At the end of the guardianship hearing, the district court stated:

Finding that neither party says there has been any change—not party, but neither witness has indicated any change. This is what I am going to do. I understand your concerns, [J.W.], regarding having a family member appointed and not just leaving [B.K.J.] alone to a third party. I never thought of it before, I think you make a good argument—or statement there for why you want to be involved. So, I am going to appoint co-guardians as you and GAPS, with full authority except for those listed; educational, voting, DMV, and legal proceedings. I think you have her best interests in mind. I think the statute dictates that you be appointed as a family member. I think you've shown your intentions.

However, it is evident from the district court's findings that it did not solely rely on this, as its written findings do not even mention this. When there is a discrepancy between findings made on the record and written findings, the written findings prevail. *Federal Land Bank of St. Paul v. Lillehaugen*, 404 N.W.2d 452, 454 (N.D. 1987) ("Generally, a trial court's written findings of fact prevail when a discrepancy exists between those findings and the court's prior memorandum opinion or oral ruling."). Further, B.K.J. takes the statement out of context, as the district court only made this statement after emphasizing the importance to B.K.J.'s best interests of having a family member involved in the guardianship. As such, we conclude the district court did not misapply the law and did not abuse its discretion in appointing J.W. and G.A.P.S. to be B.K.J.'s co-guardians.

## IV

[¶ 25] Finally, B.K.J. argues the district court failed to exercise its authority to appoint B.K.J.'s guardians consistent with the maximum self-reliance and independence of B.K.J., under N.D.C.C. § 30.1–28–04(1), because the appointment of J.W. and G.A.P.S. as co-guardians would inevitably necessitate B.K.J.'s removal to an assisted living facility. Section 30.1–28–04(1), N.D.C.C., provides: "The court shall exercise the authority conferred in this chapter consistent with the maximum self-reliance and independence of the incapacitated person...."

[¶ 26] Here, the parties stipulated a guardianship was necessary. Moreover, the district court concluded:

> 13. Further, based upon the report of the court appointed visitor and the testimony of witnesses, there is no available alternative resource plan that is suitable to safeguard the health, safety, or habilitation of the proposed Ward which could be used instead of a guardianship and conservatorship.

On appeal, B.K.J. does not dispute that a guardianship was necessary. Nor does B.K.J. argue that the district court's determinations as to which rights she retains and which decisions she has the capacity to make were erroneous. Rather, B.K.J. solely argues the district court appointed the wrong guardians. There was sufficient evidence presented to support the district court's decision appointing J.W. and G.A.P.S. as B.K.J.'s guardians. Further, regardless of who the district court appointed to be B.K.J.'s guardian, the court-appointed physician testified B.K.J. required constant supervision, whether that be through in-home care or at an assisted living facility. As such, the district court properly exercised its authority to appoint J.W. and G.A.P.S. as B.K.J.'s co-guardians consistent with N.D.C.C. § 30.1–28–04(1).

## V

[¶ 27] On this record, in appointing J.W. and G.A.P.S. as B.K.J.'s co-guardians, the district court did not act in an arbitrary, unreasonable, or unconscionable manner, its decision is the product of a rational mental process leading to a reasoned determination, and it did not misinterpret or misapply the law. *See Mariner Constr.*, 2006 ND 108, ¶ 8, 714 N.W.2d 484.

[¶ 28] We affirm the district court's order appointing J.W. and G.A.P.S. as B.K.J.'s co-guardians because its findings were not clearly erroneous and it did not abuse its discretion in appointing J.W. and G.A.P.S. as co-guardians.

[¶ 29] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, CAROL RONNING KAPSNER and DALE V. SANDSTROM, concur.