2015 ND 267

**In re GUARDIANSHIP and Conservatorship of M.E., Ward and Protected Person**

**N.P. and M.N., Petitioners and Appellees**

v.

**M.E., Respondent and Appellant.**

**No. 20150117.**

Supreme Court of North Dakota.

Dec. 1, 2015.

Rehearing Denied Dec. 22, 2015.

We affirm the order denying her petition to be restored to capacity. We modify the order appointing co-guardians and co-conservators to restore M.E.'s right to testify in judicial or administrative proceedings and affirm the order as modified.

I

[¶2] In October 2014, two of M.E.'s children, N.P. and M.N., petitioned the district court for a temporary (emergency) guardianship and conservatorship. The petition alleged M.E. was in need of a guardian after falling victim to a financial scam and attempting suicide. When the petition was filed, M.E. was hospitalized at Prairie St. John's, a mental health facility in Fargo. M.E.'s daughter J.L. stated in an affidavit supporting the petition that M.E. lost $30,000 to $50,000 as a result of the financial scam. Also attached to the petition was a letter from Dr. LaWana Burtnett, who was treating M.E. at Prairie St. John's. The letter recommended the appointment of a guardian and conservator. The district court, by ex parte order, appointed N.P. and M.N. as emergency co-guardians and co-conservators and also appointed a guardian ad litem for M.E.

[¶3] A few weeks later, N.P. and M.N. petitioned for a permanent guardianship and conservatorship. They also moved the district court to approve the letter from Dr. Burtnett as the statutorily required physician's report. The court granted the motion approving Dr. Burtnett's letter as the required physician's report and appointed a visitor to interview M.E.

[¶4] At a November 2014 hearing on N.P. and M.N.'s petition for a permanent guardianship and conservatorship, M.E. testified against the appointment of a guardian and conservator, claiming she could take care of herself and did not require a guardian and conservator. The visitor and guardian ad litem submitted

Peter E. Karlsson, Moorhead, MN, for petitioners and appellees.

David A. Garaas, Fargo, N.D., for respondent and appellant.

KAPSNER, Justice.

[¶1] M.E. appeals a district court order appointing co-guardians and co-conservators of her estate and an order denying her petition to be restored to capacity.

reports before the hearing supporting the appointment of a guardian and conservator. In its findings of fact, conclusions of law, and order dated December 2, 2014, the court found M.E. was an incapacitated person and appointed N.P. and M.N. as M.E.'s co-guardians and co-conservators. The order allowed M.E. to retain the right to vote and possess firearms. The order, however, did not allow M.E. to retain the right to change marital status, obtain or retain a driver's license, or testify in judicial or administrative proceedings.

[¶ 5] In January 2015, N.P. and M.N. petitioned the district court for approval to list M.E.'s house for sale. In an affidavit supporting the petition, they stated M.E. was unlikely to return to the house due to her physical limitations and vulnerability to further financial exploitation. N.P. and M.N. stated proceeds from the sale of the house would help pay for M.E.'s care at Bethany Retirement Living, an assisted-living facility in Fargo. The court granted the petition.

[¶ 6] In March 2015, M.E. petitioned the district court to vacate its earlier order appointing co-guardians and co-conservators and restore her to capacity. She also moved the court for an order restraining N.P. and M.N. from selling her house. She argued the guardianship order was defective because she was not personally served with the notice of hearing, the court failed to appoint a physician, the guardian ad litem failed to properly advocate for her, and there was insufficient evidence to support the need for a guardianship and conservatorship. She claimed she would return to her house if she were restored to capacity. The court entered an order delaying the sale of the house until after an April 2015 hearing on M.E.'s petition to restore her to capacity. The court also appointed M.E.'s attending physician to examine her and submit a report.

[¶ 7] At the April 2015 hearing, M.E. testified against the guardianship and conservatorship. The appointed physician declined to examine M.E. and submit a report. The court denied M.E.'s petition at the conclusion of the hearing and vacated the order restraining the sale of the house.

II

[¶ 8] M.E. raises many of the same arguments she raised in her motion to vacate the district court's order appointing co-guardians and co-conservators, including lack of jurisdiction and notice, failure to appoint a physician, errors made by the guardian ad litem, and insufficient evidence to support a guardianship and conservatorship.

[¶ 9] In guardianship proceedings, this Court reviews findings of fact under the clearly erroneous standard of N.D.R.Civ.P. 52(a). *In re Guardianship of B.K.J.*, 2015 ND 191, ¶ 4, 867 N.W.2d 345. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support the finding, or if, on the entire record, we are left with a definite and firm conviction a mistake has been made. *Sweeney v. Kirby*, 2015 ND 148, ¶ 7, 864 N.W.2d 464. "If a statute requires express findings by the district court, failure to make such findings may constitute reversible error when the record does not reflect whether the issue was considered." *B.K.J.*, at ¶ 4.

A

[¶ 10] M.E. argues the district court lacked personal jurisdiction over her because she was not personally served with notice of the November 2014 hearing. Under N.D.C.C. § 30.1–28–09(1)(a), the proposed ward in a guardianship proceeding must be served with notice of the hearing. Under N.D.C.C. § 30.1–28–09(2), "[n]otice must be served personally on the

ward or proposed ward, and ... [w]aiver of notice by the ward or proposed ward is not effective unless the ward or proposed ward attends the hearing."

[¶ 11] Although the guardian ad litem's notes indicate she gave a copy of the notice of hearing to M.E. when she met with her on October 31, 2014, there is no affidavit of service stating M.E. was personally served with notice of the November 2014 hearing, and there is no evidence M.E. waived notice. Although M.E. was not personally served with a notice of hearing, she appeared at the hearing and did not argue service of the notice was defective. Under these circumstances, we conclude the district court acquired personal jurisdiction over M.E., and M.E. waived any objection regarding personal jurisdiction by not raising it at the November 2014 hearing.

### B

[¶ 12] M.E. argues the district court violated her statutory rights by failing to appoint a physician.

[¶ 13] The Uniform Probate Code, N.D.C.C. tit. 30.1, governs the appointment of a guardian and conservator. Title 30.1 "shall be liberally construed and applied to promote its underlying purposes and policies." N.D.C.C. § 30.1–01–02. In cases before the adoption of the Uniform Probate Code, this Court stated, "Probate procedure ... is wholly statutory. Substantial compliance is required." *In re Estate of Ashbrook*, 110 N.W.2d 184, 190 (N.D.1961); *see also In re Estate of Anderson*, 76 N.D. 163, 167, 34 N.W.2d 413, 415–16 (N.D.1948).

[¶ 14] Under N.D.C.C. § 30.1–28–03(3), "[u]pon the filing of a petition, the court shall ... appoint a physician or clinical psychologist to examine the proposed ward." *See also In re Estate of Gleeson*, 2002 ND 211, ¶ 14, 655 N.W.2d 69 ("The appointment of a guardian requires the participation of a physician or clinical psychologist."). Under N.D.C.C. § 30.1–28–03(5), the physician must submit a written report to the court, which must contain:

a. A description of the nature and degree of any current incapacity or disability, including the medical or psychological history, if reasonably available;

b. A medical prognosis or psychological evaluation specifying the estimated severity and duration of any current incapacity or disability;

c. A statement as to how or in what manner any underlying condition of physical or mental health affects the proposed ward's ability to provide for personal needs; and

d. A statement as to whether any current medication affects the demeanor of the proposed ward or the ability of the proposed ward to participate fully in any court proceeding or in any other procedure required by the court or by court rule.

[¶ 15] Rather than appointing a physician to examine M.E., the district court accepted the petitioners' letter dated September 30, 2014, from Dr. Burtnett as the physician's report under N.D.C.C. § 30.1–28–03(5). Dr. Burtnett stated M.E. was transferred from Essentia Health and admitted to her care at Prairie St. John's on September 19, 2014, after overdosing on medication. Dr. Burtnett stated M.E. was prescribed pain medications and benzodiazepines that cause cognitive impairment if taken in excess. Dr. Burtnett stated M.E. showed mild-to-moderate memory impairment and may have some underlying dementia. Dr. Burtnett opined M.E. is a disabled person on the basis of her impaired judgment and insight, and the impairment is "to such an extent that she

lacks the capacity to manage her financial resources or to meet essential requirements for her physical health or safety or both." Dr. Burnett concluded her letter by recommending the appointment of a guardian and conservator for M.E.

[¶ 16] The purpose of the physician's report under N.D.C.C. § 30.1–28–03(5) is to ensure the district court has an adequate medical basis for a finding of incapacity to justify the appointment of a guardian. *In re Conservatorship and Guardianship of Pulver*, 117 N.M. 329, 871 P.2d 985, 991 (Ct.App.1994) ("We believe that the purpose of [the physician's report] is to ensure that the court has the necessary medical and mental evaluations needed in a guardianship case.").

[¶ 17] Although the district court did not appoint a physician to examine M.E. before the November 2014 hearing, the court did appoint a physician before the April 2015 hearing. The appointed physician, however, declined to examine M.E. and submit a report. Dr. Burtnett examined M.E. and submitted her letter shortly before the emergency petition was filed. Dr. Burtnett's letter provided a medical evaluation to the court satisfying the requirements of N.D.C.C. § 30.1–28–03(5). In light of N.D.C.C. tit. 30.1's directive on liberal construction, the purpose of the physician's report, and our earlier holdings on substantial compliance in probate cases, we conclude the district court substantially complied with N.D.C.C. §§ 30.1–28–03(3) and 30.1–28–03(5), and did not err in accepting Dr. Burtnett's letter as the required physician's report.

### C

[¶ 18] M.E. argues the appointed guardian ad litem failed to properly advocate for her. She argues the guardian ad litem should have advocated for her wishes, which was to remain in her own home and not have a guardian appointed.

[¶ 19] Under N.D.C.C. § 30.1–28–03(3), the district court is required to appoint an attorney to act as guardian ad litem for the proposed ward. Under N.D.C.C. § 30.1–28–03(4), the duties of the attorney acting as guardian ad litem include:

a. Personally interviewing the proposed ward;

b. Explaining the guardianship proceeding to the proposed ward in the language, mode of communication, and terms that the proposed ward is most likely to understand, including the nature and possible consequences of the proceeding, the right to which the proposed ward is entitled, and the legal options that are available; and

c. Representing the proposed ward as guardian ad litem. If the appointed attorney or other attorney is retained by the proposed ward to act as an advocate, the attorney shall promptly notify the court, and the court may determine whether the attorney should be discharged from the duties of guardian ad litem.

[¶ 20] M.E. argues the guardian ad litem should have acted as an advocate to represent her wishes. Under N.D.C.C. § 30.1–28–03(4)(c), the appointed attorney represents the proposed ward as guardian ad litem, not as an advocate. M.E. did not retain the guardian ad litem to act as her advocate. The guardian ad litem's report noted M.E. was not in favor of a guardianship, but concluded a guardianship was in M.E.'s best interests. We conclude the guardian ad litem fulfilled her duties under N.D.C.C. § 30.1–28–03(4), and M.E.'s argument is without merit.

**D**

[¶ 21]   M.E. argues there is insufficient evidence to support the need for a guardianship and conservatorship and the court did not provide for the least restrictive alternative to guardianship and conservatorship.

[¶ 22]   Under   N.D.C.C.   § 30.1–28–04(2)(c), a court may appoint a guardian "only after finding in the record based on clear and convincing evidence that":

(1) The proposed ward is an incapacitated person;

(2) There is no available alternative resource plan that is suitable to safeguard the proposed ward's health, safety, or habilitation which could be used instead of a guardianship;

(3) The guardianship is necessary as the best means of providing care, supervision, or habilitation of the ward; and

(4) The powers and duties conferred upon the guardian are appropriate as the least restrictive form of intervention consistent with the ability of the ward for self-care.

[¶ 23]   At the conclusion of the November 2014 hearing on the petition to appoint a guardian, the district court stated:

So on the information presented to the Court, the respondent suffers from memory impairment; that there was an episode of giving money to another person, not a family member, in anticipation of receiving a sweepstakes award; she's had difficulty taking her medications as prescribed, to her detriment, which required hospitalization; her two children are appropriate persons to act as her guardians. The petition is granted.

[¶ 24]   In its order appointing co-guardians and co-conservators, the court found by clear and convincing evidence:

a. The proposed ward is an incapacitated person in that the proposed ward lacks sufficient understanding or capacity to make or communicate responsible decisions concerning the proposed ward. The proposed ward is in need of medical care, assistance in legal and financial matters, and safety as shown in the letter of La-Wana Burtnett, M.D. and affidavit of [J.L.]. The visitor and attorney guardian ad litem support the petition as in the best interest of the ward.

b. Appointment of co-guardians and co-conservators is necessary and desirable as the best means of providing care, supervision, and habilitation of the proposed ward.

c. There is no available alternative resource plan that is suitable to safeguard the health, safety, or habilitation of the proposed ward which could be used instead of a guardianship.

d. [N.P.] and [M.N.] are the best qualified persons to serve as co-guardians and co-conservators of [M.E.], an incapacitated person or person of limited capacity.

Under the order, the co-guardians and co-conservators were given general authority to make residential, educational, medical, legal, vocational, and financial decisions on behalf of M.E.

[¶ 25]   In making these findings, the district court relied on the guardian ad litem's report, the visitor's report, and Dr. Burtnett's letter, all in support of the guardianship. In referring to the amount of money that M.E. lost in the financial scam, the visitor stated M.E. has "no idea of the money that was lost." The visitor also stated M.E.'s memory deficits leave her unable to make responsible decisions for herself.

[¶ 26] The guardian ad litem's report indicates M.E. "could remember nothing from mid-August to mid-October, but blames this on her medication rather than the dementia suggested by Dr. Burtnett." M.E. believed the guardianship was her children's way to take her money and denied she was the victim of a financial scam. When the guardian ad litem met with M.E. for a second time, M.E. could not remember the first meeting with the guardian ad litem. M.E. also did not remember receiving the guardianship paperwork from the guardian ad litem at their second meeting, claiming she later received it for the first time when it was mailed to her by the petitioners.

[¶ 27] At the April 2015 hearing on M.E.'s petition to vacate the district court's earlier orders and restore her to capacity, N.P. testified she had concerns about M.E.'s safety if she were allowed to return to her own home. She testified M.E. had fallen, overdosed on medication, and smoked in the home, leaving cigarette burns on the carpet. During M.E.'s testimony, she admitted to falling in the house and did not deny she overdosed on medication and smoked while living there. M.E. testified she was not incapacitated, but she did not submit other evidence supporting her testimony. The appointed physician refused to examine M.E. and submit a report before the hearing.

[¶ 28] At the conclusion of the April 2015 hearing, the district court stated:

On the evidence presented, previously the Court found that the respondent lacked capacity to make prudent judgments concerning her care and that her judgments were endangering her health and safety. The respondent in part in her petition for restoration of capacity requests permission to return, basically, to the previous circumstances that had endangered her health. The respondent had a history of overdose in September of 2014 on pain medication. She had left, as evidenced by Exhibit 2, in the approximate same time frame as this incident, a note or wishes concerning her estate. At the time she was found, she was unresponsive. This was considered an attempted suicide by her care providers. She—the respondent has a history of being financially exploited as evidenced by Exhibit 1 in a series of checks she wrote to an unidentifiable person who the respondent has no memory of who that person was. The evidence suggests that she had befriended a person over the telephone who had informed her that she had won a lottery, and she was sending money at his direction to persons who cashed the checks at various check cashing businesses once they received them. The respondent received nothing in return, that the evidence indicates. The respondent continues to have limited insight into her limitations. She does not realize that she had been financially exploited. She does not realize that her lack of discipline in taking her medications had caused her the difficulties she did have. She admits to not having any clear memory from the period August 2014 through the time she was hospitalized. There are legitimate concerns that the respondent would not take her medication as prescribed or provide appropriately for her care. The respondent does exhibit memory difficulties, mild to moderate, including the recollection of the events that led to her exploitation. She has a history of pain medication induced delirium. She presently takes pain medications, although of a different type, and has various physical limitations, including neuropathy, spinal stenosis, lupus, fibromyalgia, memory difficulties. She has anger which may be related situationally to

her altered living arrangements. She cannot recall or won't admit to the circumstances involving her financial exploitation. The respondent is unable to drive due to her pain medications. The respondent was smoking in her home, which posed a fire danger, when she was on medicine. She is not allowed to smoke in her present living facility. Presently the respondent is living in an assisted living arrangement in Bethany Homes. That living arrangement is appropriate based on the evidence that the Court has heard today. The petition for restoration of capacity is denied. The respondent continues to be incapacitated.

[¶ 29] On the basis of the reports, testimony, and evidence submitted at the hearings, we conclude the district court's findings regarding M.E.'s incapacity, the necessity of the guardianship, and the authority given to the co-guardians and co-conservators are not clearly erroneous. The evidence supports the court's findings, and we are not left with a definite and firm conviction a mistake was made.

E

[¶ 30] M.E. argues the district court erred by depriving her of the right to marry, the privilege of obtaining or maintaining a driver's license, and the right to testify in judicial proceedings. M.E. argues the court deprived her of those rights without making specific findings.

[¶ 31] Section 30.1–28–04(3), N.D.C.C., states that "[e]xcept upon specific findings of the court, no ward may be deprived of any of the following legal rights: to vote, to seek to change marital status, to obtain or retain a motor vehicle operator's license, or to testify in any judicial or administrative proceedings."

■ [¶ 32] M.E. retained the rights to vote and possess firearms, but was deprived of the rights to change marital status, obtain or retain a driver's license, or testify in judicial or administrative proceedings. As discussed above, the district court found M.E. could not recall or would not admit to being exploited financially, and she is unable to drive due to her pain medications. We conclude those findings satisfy N.D.C.C. § 30.1–28–04(3), and the court did not err in depriving M.E. of the rights to marry and obtain a driver's license.

■ [¶ 33] Regarding M.E.'s right to testify in judicial or administrative proceedings, the district court found M.E. exhibits mild to moderate memory difficulties. There is evidence to support this finding, but there is no specific finding or evidence that M.E.'s memory difficulties would preclude her from testifying in judicial or administrative proceedings. M.E. testified at both hearings in this proceeding. At the November 2014 hearing, the court stated that "[M.E.] seems to be able to express herself pretty well." We conclude the court erred in depriving M.E. of the right to testify in judicial or administrative proceedings without a specific finding under N.D.C.C. § 30.1–28–04(3). We therefore modify the order dated December 2, 2014, to restore M.E.'s right to testify in judicial or administrative proceedings.

III

■ [¶ 34] M.E. argues the district court erred in allowing the sale of her house. She argues her house was exempt property and should not have been sold.

■ [¶ 35] Subject to a conservator's fiduciary responsibilities and the prudent person standard of care in dealing with the protected person's estate, a conservator has discretionary authority to sell the protected person's real property. *In re Con-*

*servatorship of Kinney,* 495 N.W.2d 69, 71 (N.D.1993); *see also* N.D.C.C. §§ 30.1–29–17 and 30.1–29–24. We review a district court's authorization of a conservator's sale of a protected person's property under an abuse of discretion standard. *Kinney,* at 71. A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, when its decision is not the product of a rational mental process leading to a reasoned determination, or when the court misinterprets or misapplies the law. *Yesel v. Brandon,* 2015 ND 195, ¶ 18, 867 N.W.2d 677.

[¶ 36] By affidavit, N.P. and M.N. stated costs of care at Bethany Retirement Living were draining M.E.'s finances and a sale of the house was necessary to continue paying for costs of care at Bethany and expenses related to the guardianship and conservatorship. The district court found M.E.'s assisted-living arrangement at Bethany was appropriate based on the evidence presented at the April 2015 hearing. Given the court's findings of fact explaining the basis of its decision, we conclude the court did not abuse its discretion in authorizing the sale of M.E.'s house.

### IV

[¶ 37] We have considered M.E.'s remaining arguments and find them to be either without merit or unnecessary to our decision. The order denying M.E.'s petition to be restored to capacity is affirmed. The order appointing co-guardians and co-conservators is affirmed as modified.

[¶ 38] GERALD W. VANDE WALLE, C.J., LISA FAIR McEVERS, DANIEL J. CROTHERS and DALE V. SANDSTROM, JJ., concur.