2017 ND 121

**IN RE GUARDIANSHIP and Conservatorship of M.E., Ward and Protected Person**

**N.P. and M.N., Petitioners**

v.

**M.E., Respondent and Appellant**

**No. 20160327**

Supreme Court of North Dakota.

Filed 5/16/2017

N.P. and M.N., petitioners; no appearance.

David A. Garaas, Fargo, N.D. 58103, for respondent and appellant.

Crothers, Justice.

[¶ 1] M.E. appeals from an order denying her petition to be restored to capacity. M.E. argues the district court erred by denying her petition because no evidence shows she currently lacks the ability to care for herself and the court failed to order the least restrictive form of intervention. We affirm, concluding M.E. failed to establish a prima facie case for termination of the guardianship or for a less restrictive form of intervention.

## I

[¶ 2] In 2014 M.E.'s children, N.P. and M.N., petitioned the district court for a guardianship and conservatorship, alleging M.E. was in need of a guardian after falling victim to a financial scam and attempting suicide. The district court appointed N.P. and M.N. as M.E.'s co-guardians and co-conservators. In 2015 M.E. petitioned the court to vacate its order appointing the co-guardians and co-conservators and to restore her to capacity. The court denied her petition. On appeal, this Court modified and then affirmed the order appointing the co-guardians and co-conservators, and we affirmed the order denying the petition to be restored to capacity. *In re Guardianship of M.E.*, 2015 ND 267, ¶ 1, 871 N.W.2d 435.

[¶ 3] In June 2016 M.E. petitioned the district court to be restored to capacity, claiming she no longer was incapacitated and she was able to care for herself. The court appointed a visitor. A visitor's report was filed, recommending some type of guardianship remain in place, but stating the visitor believed M.E. could live in a less restrictive environment if certain services were in place.

[¶ 4] At a July 2016 hearing the district court allowed the parties to provide argument to the court. M.E. informed the court she wanted to move out of the assisted living facility and move to an apartment, and she claimed she could be responsible for taking her medications and could get help with her finances. M.E.'s attorney informed the court they would provide a specific plan at a later date. The court continued the hearing and requested M.E. provide a specific formal plan addressing her needs.

[¶ 5] A second hearing was held in August 2016. M.E.'s attorney informed the court that M.E. wanted to move out of the assisted living facility and into an apartment, she probably could afford an apartment on her income and Fargo Public Health could possibly offer a service to assist her with taking medication if necessary. M.E.'s attorney also stated M.E. was willing to authorize a general durable power of attorney that would be effective if a doctor said she is incapable of caring for herself or her finances because of disability. The co-guardians and co-conservators objected to the termination of the guardianship and conservatorship.

[¶ 6] In an August 2016 order the district court denied M.E.'s petition to be restored to capacity. The court found M.E. did not comply with the court's request to present a formal plan for a less restrictive form of intervention. The court found M.E. continues needing a guardian and evidence of a workable alternative plan to provide for her health and safety was not provided.

## II

[¶ 7] M.E. argues the district court erred by not restoring her to full capacity and not terminating the guardianship and conservatorship. She contends the co-guardians had the burden to prove she remains incapacitated and the guardianship is the least restrictive form of intervention. She claims no evidence established she lacks the ability to care for herself and handle her finances because the co-guardians did not testify or present any other evidence about her current condition.

[¶ 8] In guardianship proceedings we review the district court's factual findings under the clearly erroneous standard. *Guardianship of M.E.*, 2015 ND 267, ¶ 9, 871 N.W.2d 435. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, no evidence supports the finding, or if, on the entire record, this

Court is left with a definite and firm conviction a mistake has been made. *Id.*

██ [¶ 9] Section 30.1–28–07, N.D.C.C., governs the termination of a guardianship and provides:

"2. The ward or any person interested in the ward's welfare may petition for an order that the ward is no longer incapacitated, and for removal of the guardian. . . .

"3. Before removing a guardian, accepting the resignation of a guardian, or on finding that the ward is no longer incapacitated and ordering the guardianship terminated, the court, following the same procedures to safeguard the rights of the ward as apply to a petition for appointment of a guardian, may send a visitor to the residence of the present guardian and to the place where the ward resides or is detained, to observe conditions and report in writing to the court."

An "incapacitated person" is:

"any adult person who is impaired by reason of mental illness, mental deficiency, physical illness or disability, or chemical dependency to the extent that the person lacks capacity to make or communicate responsible decisions concerning that person's matters of residence, education, medical treatment, legal affairs, vocation, finance, or other matters, or which incapacity endangers the person's health or safety."

N.D.C.C. § 30.1–26–01(2).

██ [¶ 10] Section 30.1–28–07, N.D.C.C., does not explicitly state which party has the burden of proof in guardianship termination proceedings, and this Court has never addressed the issue. However, we have held the principles of a prima facie case and shifting burdens apply to guardianship proceedings. *In re Guardianship/Conservatorship of Van Sickle*, 2005 ND 69, ¶ 28, 694 N.W.2d 212. We explained the concept of a prima facie case:

"The plaintiff or moving party generally bears the burden of proof. If the party bearing the burden of proof presents evidence strong enough, if uncontradicted, to support a finding in her favor, that party has made a prima facie case. When the party with the burden of proof establishes a prima facie case, 'the burden of going forward with the evidence . . . shifts to the defendant. If the defendant can impair the prima facie quality of [i.e., rebut] the case against him, the burden [of going forward] returns to the party having the burden of proof.' If the party having the burden of proof establishes a prima facie case, this party will prevail unless the opposing party offers 'proof to the contrary.' "

*Id.* at ¶ 27 (quoting *O'Neill v. O'Neill*, 2000 ND 200, ¶ 3, 619 N.W.2d 855).

[¶ 11] In *Van Sickle*, 2005 ND 69, ¶ 4, 694 N.W.2d 212, the guardian moved the ward to a more restrictive living arrangement at a basic care facility after giving the parties notice. An organization appeared on behalf of the ward and commenced an order to show cause proceeding against the guardian, demanding the guardian be removed and its decision to place the ward in the facility be set aside. *Id.* at ¶ 5. This Court said the law demands a least-restrictive protection approach in guardianship matters to ensure the ward's personal liberties and prerogatives are restricted only to the extent necessary under the circumstances. *Id.* at ¶ 23. We said the party proposing the transfer of a ward to a more restrictive living arrangement has the burden to prove the proposed placement is the least restrictive alternative available. *Id.* at ¶ 26. Citing *In re Guardianship of Hedin*, 528 N.W.2d 567, 581 (Iowa 1995), and *In re Sanders*, 108 N.M.

434, 773 P.2d 1241, 1245 (N.M. Ct. App. 1989), this Court held the guardian had the burden to establish a prima facie case that the living situation was the least restrictive placement available for the ward; if a prima facie case was established, the ward had the burden to present evidence impairing the prima facie case; and if the prima facie case was impaired, the guardian was required to prove by clear and convincing evidence that the living situation was the least restrictive alternative. *Van Sickle*, at ¶ 28.

[¶ 12] In *Sanders*, 773 P.2d at 1245, the New Mexico Court of Appeals held the party petitioning for termination of a treatment guardianship must establish a prima facie case showing the patient is capable of making informed treatment decisions. In deciding which party has the initial burden, the court considered the language of the statute governing termination, and interpreted the statute to require "the petitioner make a prima facie showing that he is capable of making informed treatment decisions in any action initiated by him seeking to terminate the appointment of a treatment guardianship during the period of the existing guardianship." *Id.* The court noted the patient's incapacity to make an informed treatment decision had already been proven and there is a presumption that the patient's prior condition continues to exist. *Id.* at 1244. The court explained that requiring the patient to make a prima face showing does not shift the burden of proof. *Id.* at 1245.

[¶ 13] In *Hedin*, 528 N.W.2d at 581, the Iowa Supreme Court said the analysis in *Sanders* was persuasive and held that when a ward moves to terminate a guardianship, the ward must make a prima facie showing that she has some decision making capacity. The court further held that once the ward establishes a prima facie

case, the guardian has the burden to go forward to prove the ward's incompetency by clear and convincing evidence. *Id.* The court explained, "Throughout the proceedings (initial appointment of guardian, modification of guardianship, or termination), this burden of persuasion rests on the party petitioning for guardianship or on the guardian if a guardianship has been established." *Id.*

[¶ 14] We do not adopt the *Sanders* court's presumption that the ward's prior condition continues, but we do agree the ultimate burden to prove the need for a guardianship remains with the party petitioning for guardianship, or on the guardian if a guardianship has been established. Such a holding is consistent with the burden of proof requirements we have recognized in other guardianship proceedings. *See Van Sickle*, 2005 ND 69, ¶ 28, 694 N.W.2d 212. At the same time, N.D.C.C. § 30.1–28–07 does not limit how often a ward may petition for termination of the guardianship. It therefore is appropriate that the ward make a prima facie showing she no longer is incapacitated before the burden shifts to the guardian to prove the ward remains incapacitated and the guardianship continue.

[¶ 15] Here, M.E. had the burden of establishing a prima facie case that she no longer was incapacitated. Upon M.E. meeting that burden, the co-guardians had the burden of proving by clear and convincing evidence that M.E. remains an incapacitated person.

[¶ 16] The guardianship and conservatorship was ordered after the district court found M.E. suffers from memory impairment, she was the victim of a financial scam and she had difficulty taking her medications as prescribed, which resulted in her hospitalization. *Guardianship of M.E.*, 2015 ND 267, ¶ 23, 871 N.W.2d 435. M.E. submitted recent progress notes

from her psychologist in support of her petition for restoration of capacity. The notes indicate M.E.'s judgment is mildly impaired, her insight is impaired and she does not show any cognitive impairment. The notes also state M.E. had been diagnosed with delusional disorder, but that diagnosis was questioned, M.E. was tested as part of the psychologist's work-up and found to have no clinical impairment and her diagnosis was changed to generalized anxiety disorder. M.E. did not present any other support for her petition.

[¶ 17] The visitor's report indicates M.E. has less memory of the months before her hospitalization due to the medication overdose and medication induced delirium, she shows a lack of insight and judgment into her financial matters, she requested money for another recent scam and she indicated she would not accept any type of help with her medications if the guardianship was terminated. The visitor recommended some type of guardianship remain in place due to M.E.'s lack of insight and judgment about her medications and finances. The visitor's report indicates M.E. could live in a less restrictive environment if certain services were in place. The visitor's report did not support M.E.'s request to be restored to capacity and terminate the guardianship.

[¶ 18] The psychologist's notes and the visitor's report were not sufficient to establish a prima facie case for termination of the guardianship and M.E. failed to present any further evidence. We therefore conclude M.E. failed to establish a prima facie case for restoration to capacity and the district court did not err in denying her petition.

### III

[¶ 19] M.E. argues the district court erred by failing to order the least restrictive form of intervention consistent with her ability to care for herself. She claims that the district court had a duty to determine whether an alternative resource plan existed that was suitable to safeguard her interests, and that she informed the court of her plan to move to an apartment and to receive help with her medication. She argues she no longer had the burden of proof after she submitted the notes from her psychologist and the burden of proof was on her guardians to establish her plan was not a suitable alternative to the full guardianship.

[¶ 20] As we stated above, this Court has addressed which party must prove a ward's residential placement is the least restrictive alternative available. *See Van Sickle*, 2005 ND 69, ¶ 28, 694 N.W.2d 212. When a ward moves for a less restrictive placement, the ward must make a prima facie showing that a less restrictive alternative exists. *See id.* at ¶¶ 27–28; *Hedin*, 528 N.W.2d at 581; *Sanders*, 773 P.2d at 1245. Once the ward presents a prima facie case, the guardian has the burden to come forward with clear and convincing evidence that the ward's current placement is the least restrictive alternative available. *See Van Sickle*, at ¶¶ 27 –28, 871 N.W.2d 435; *Hedin*, at 581; *Sanders*, at 1245.

[¶ 21] In this case M.E. informed the district court she wanted to move out of the assisted living facility and into an apartment. The court provided M.E. an opportunity to present a specific formal plan that would address her needs and ensure her safety. During the second hearing M.E. and her attorney informed the court that she could rent an apartment, Fargo Public Health will offer a service to assist her with taking her medication if it is necessary and she was willing to authorize a general durable power of attorney that would be effective if a doctor says she

is incapable of caring for herself or her finances because of disability.

[¶ 22] The district court found M.E. did not present a plan for a less restrictive form of intervention. The court explained:

"[M.E.] will not cooperate with the guardians (her children) on any details related to her health or safety. [M.E.] indicated she could find an apartment, but no address, description, or availability was provided. [M.E.] indicated she could receive help with administering her medications, but gave no plan on how this would be accomplished. Further, [M.E.] described that she would not need assistance in managing her finances, but failed to present a plan to prevent her from being victim to another financial scam."

[¶ 23] The evidence supports the court's findings. M.E. failed to establish a prima facie case that a less restrictive form of intervention exists. We conclude the court did not err by failing to order a less restrictive form of intervention.

## IV

[¶ 24] We affirm the order denying M.E.'s petition to be restored to capacity.

[¶ 25] Daniel J. Crothers

Lisa Fair McEvers

Carol Ronning Kapsner

Jerod E. Tufte

Gerald W. VandeWalle, C.J.