# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2024 ND 189

In the Matter of the Guardianship and Conservatorship of K.H.P., an incapacitated person

K.H.P., ward,                                                        Petitioner and Appellant

v.

Lutheran Social Service of Minnesota,
and First Western Bank and Trust,                                   Respondents

## No. 20240021

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Cynthia M. Feland, Judge.

REVERSED.

Opinion of the Court by McEvers, Justice.

Jesse H. Walstad (argued) and Monte L. Rogneby (on brief), Bismarck, ND, for petitioner and appellant.

Gary R. Leistico, Clear Lake, MN, for amicus curiae K.S.P.

**Guardianship and Conservatorship of K.H.P.**
**No. 20240021**

**McEvers, Justice.**

[¶1]   K.H.P. (the "Ward") appeals from an order denying his petition to terminate his limited guardianship and extending the limited guardianship for two years. We reverse, concluding the district court erred in determining the Ward failed to make a prima facie case for termination of the limited guardianship and in appointing an expert examiner in the termination or review proceedings. We conclude as a matter of law there was no showing by clear and convincing evidence that the Ward is an incapacitated person and therefore the limited guardianship is terminated.

I

[¶2]   In December 2021, the Ward's adult son, K.S.P., petitioned for an ex parte appointment of an emergency guardianship over the Ward and for a permanent guardianship following a hearing, alleging the Ward was an incapacitated person. The district court denied the ex parte appointment, but after a hearing, appointed K.S.P. as the emergency guardian. The court appointed Dr. Rodney Swenson as an expert examiner. Prior to a hearing on the petition for long-term guardianship, the Ward and K.S.P. stipulated that the Ward is incapacitated requiring the appointment of a limited guardian and is unable to manage his estate requiring the appointment of a conservator. They requested that Lutheran Social Service of Minnesota ("LSS") be appointed as limited guardian and First Western Bank be appointed as conservator of the estate.

[¶3]   On February 24, 2022, the district court issued an order consistent with the stipulation, appointing LSS as limited guardian for a period of one year and appointing First Western Bank as conservator for a period of five years.[1] The order stated that upon issuance of the Letters of Guardianship, the expert examiner shall be discharged from his duties of appointment. The Letters of

_____

[1]   The conservatorship is not at issue in this case.

Guardianship were issued the same day as the court's order, stating they "shall terminate on February 24, 2023, or upon further Order of this Court, whichever occurs first."

[¶4] In an order dated February 23, 2023, the district court continued the guardianship and set a review hearing. On February 27, 2023, the court reappointed Dr. Swenson as the expert examiner tasked with examining the Ward and submitting a report prior to the review hearing. The court also appointed a guardian ad litem and visitor. In March 2023, prior to the review hearing, the Ward petitioned for termination of the limited guardianship and an order that he is no longer incapacitated. After the Ward moved to remove K.S.P. as a party, the court ordered K.S.P. removed as a party and reclassified as an "interested person," determining his status as a "party" ceased upon resolution of the original petition establishing the limited guardianship. In September 2023, guardian LSS informed the court that it supported terminating the guardianship.

[¶5] The district court held the review hearing and the hearing on the Ward's petition for termination jointly on September 29, 2023 and October 23, 2023. Prior to the second day of the hearing, the guardian ad litem informed the court that he believes it is in the best interests of the Ward to terminate the guardianship. At the hearing, the court presented evidence first through its own direct examination of Dr. Swenson. The Ward then presented evidence through testimony from himself, his now wife, his housekeeper, his nephew, and the conservator. The court also called and examined the guardian. After the hearing, the court concluded the Ward failed to make a prima facie showing that he is no longer incapacitated, denied the Ward's petition for termination, and extended the guardianship for a period of two years. The Ward appealed, and guardian LSS stipulated the court's order should be reversed and the guardianship terminated.

II

[¶6] The Ward argues the district court was without jurisdiction to extend his guardianship. Subject matter jurisdiction can be raised at any time. *Lavallie v. Jay*, 2020 ND 147, ¶ 5, 945 N.W.2d 288. When jurisdictional facts are not in dispute,

2

the question of whether the court had jurisdiction is reviewed de novo. *Id.* "[W]hen jurisdictional facts are in dispute, we are presented with a mixed question of law and fact," and "review questions of law de novo, and findings of fact are subject to the clearly erroneous standard of review." *Id.* A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, no evidence supports the finding, or if, on the entire record, we are left with a definite and firm conviction a mistake has been made. *In re Guardianship of M.E.*, 2017 ND 121, ¶ 8, 894 N.W.2d 877.

[¶7]   In general, "[t]he court has jurisdiction over protective proceedings and guardianship proceedings." N.D.C.C. § 30.1-26-02. "A court has jurisdiction to issue a valid order if it has jurisdiction over the parties and the subject matter of the action." *In re T.H.*, 2012 ND 254, ¶ 7, 825 N.W.2d 844. We have long held that "unless a statute imposing a time limit declares the time limit is jurisdictional, we will not treat the time limit as affecting the jurisdiction of a court or administrative agency." *Id.*

[¶8]   Once a guardian is appointed, a guardian may be reappointed after a review process and hearing:

> Unless terminated earlier by the court, an order appointing or reappointing a guardian under this section is effective for up to five years. At least ninety days before the expiration of the initial order of appointment or any following order of reappointment, the court shall request and consider information submitted by the guardian, ward, ward's attorney, if any, and any interested persons regarding whether the need for a guardian continues to exist. If it is recommended that the guardianship continue, the court may appoint a guardian ad litem or visitor, or both, in accordance with section 30.1-28-03. The court shall hold a hearing on whether the guardianship should continue. Following the hearing and consideration of submitted information, the court may reappoint the guardian for up to another five years, allow the existing order to expire, or appoint a new guardian in accordance with this section.

N.D.C.C. § 30.1-28-04(5). This statute does not indicate that any of the time frames are jurisdictional.

[¶9] The Ward argues the guardianship expired and the district court lacked jurisdiction to extend it after expiration. The court appointed LSS on February 24, 2022, for a period of one year. The Letters of Limited Guardianship state they "shall terminate on February 24, 2023, or upon further Order of this Court, whichever occurs first." In an order dated February 23, 2023, and filed on February 24, 2023, the court continued the guardianship. In the order challenged on appeal, the court found this February 2023 order extending the guardianship pending a review hearing was issued on February 23, 2023. The Ward does not challenge this finding, other than stating the guardianship expired. Nor does the Ward argue the filing date is the relevant date in determining when the extension was granted by the court. We therefore conclude the court extended the guardianship on February 23, 2023, prior to its expiration.

[¶10] Additionally, the Ward argues the district court must hold a review hearing before any extension of the guardianship, even an interim extension done for the purpose of preventing a lapse in the guardianship due to a clerical oversight. The review process, however, requires only that "[a]t least ninety days before the expiration of the initial order of appointment . . . the court shall request and consider information submitted by the guardian, ward, ward's attorney, if any, and any interested persons regarding whether the need for a guardian continues to exist." N.D.C.C. § 30.1-28-04(5). Notably, the hearing itself does not need to be completed at least 90 days before the order expires. At oral argument, the Ward conceded the 90-day requirement was not a jurisdictional issue. We conclude a violation of the 90-day "request and consider[ation]" period is not a jurisdictional bar to extending the guardianship pending a review hearing.

III

[¶11] The Ward argues that because guardian LSS supported termination of the guardianship, no justiciable issue was before the district court.

[¶12] Courts adjudicate only actual controversies. *Sprunk v. N.D. Workers Comp. Bureau*, 1998 ND 93, ¶ 15, 576 N.W.2d 861. An issue is not justiciable if it is moot or not ripe for review, a party lacks standing, or resolving it would be advisory. *Id.*; *N.D. Legis. Assembly v. Burgum*, 2018 ND 189, ¶ 6, 916 N.W.2d 83.

4

[¶13] The Ward was subject to the guardianship pending the review process under N.D.C.C. § 30.1-28-04(5). Under N.D.C.C. § 30.1-28-07, the Ward has the initial burden of establishing a prima facie case that he is no longer incapacitated when petitioning to terminate his guardianship. *Guardianship of M.E.*, 2017 ND 121, ¶¶ 14-15. Therefore, whether under the review process or through the Ward's own petition for termination where he carries the initial burden, a justiciable issue was before the district court.

IV

A

[¶14] The Ward argues the district court erred by concluding he failed to establish a prima facie case supporting termination of the guardianship.

[¶15] "Section 30.1-28-07, N.D.C.C., governs the termination of a guardianship." *Guardianship of M.E.*, 2017 ND 121, ¶ 9. Under N.D.C.C. § 30.1-28-07(2), the Ward "may petition for an order that the ward is no longer incapacitated" and for termination of the guardianship. *See also Guardianship of M.E.*, at ¶ 9. The Ward has the burden of establishing a prima facie case that he is no longer incapacitated. *Id.* at ¶¶ 14-15. Upon meeting that burden, the *guardian* has the burden of proving by clear and convincing evidence that the Ward remains an incapacitated person. *Id.* at ¶ 15. An "[i]ncapacitated person" is:

> any adult person who is impaired by reason of mental illness, mental deficiency, physical illness or disability, or chemical dependency to the extent that the person lacks capacity to make or communicate responsible decisions concerning that person's matters of residence, education, medical treatment, legal affairs, vocation, finance, or other matters, or which incapacity endangers the person's health or safety.

N.D.C.C. § 30.1-26-01(2). The district court's findings are reviewed under the clearly erroneous standard. *Guardianship of M.E.*, at ¶ 8.

[¶16] The Ward contends he met the prima facie showing through his petition, the agreement for termination from guardian LSS and the guardian ad litem, and uncontested evidence presented at the hearing and through evaluative reports.

5

The hearing evidence consisted of testimony from the Ward, his now wife L.N., his long-time housekeeper, his nephew, and the conservator.

[¶17]  The district court summarized the Ward's testimony concerning his family history, meeting his now wife L.N., and his interaction with the guardian:

> The Ward, [K.H.P.], testified that he was born [in 1938] and raised into a farming family in Washburn started by his grandfather in 1901. After attending a semester in college, the Ward took over the family farm and married his first wife in 1959 with whom he enjoyed 63 years of marriage and had one child, [K.S.P.]. Following the death of his wife in January of 2021, the Ward testified that he felt down and was lonely having been used to somebody else being there with him all the time.
>
> Approximately six (6) to seven (7) months after his wife's death, the Ward testified that he met [L.N.] at Cracker Barrel, exchanged telephone numbers with her, and that the two of them have been together ever since. Having a common interest in farming and both being widowed, the Ward testified that he spent a lot of time with [L.N.] and that she moved in with him about a month after they met, maintaining a separate bedroom and sharing the household chores; [L.N.] doing the cooking and the Ward doing the laundry.
>
> For the last 30 years, the Ward testified that he has had a housekeeper who comes in about once a month for deep cleaning. The Ward testified that he and [L.N.] love each other and want to get married.
>
> In response to questions about the current guardianship, . . . [t]he Ward testified that [the guardian] inventoried everything in his home, went through everything with him and [L.N.], and set up and attended one or two doctor's appointments before telling him that [the guardian] didn't need to go with him and he could handle the appointments himself. Since that time, the Ward testified that he has handled all of his own medical appointments . . . .

(Citations omitted.) The Ward testified that he performs the repairs and installations around the house, such as installing a garbage disposal and

6

repairing the dishwasher. He testified to conversations he has had with his conservator about contractual arrangements involving his farmland.

[¶18] The Ward's wife L.N., his nephew, and his housekeeper of 20 years testified to the Ward completing household tasks and providing advice, and they did not believe his memory or cognitive ability was in decline. The Ward's housekeeper and nephew testified that although they were initially skeptical of L.N., after meeting her and getting to know her, their concerns have been alleviated and they believe her relationship with the Ward is authentic.

[¶19] The conservator testified that the Ward has a good understanding of his estate. The conservator testified that the Ward understands and provides reasonable opinions on sophisticated agreements concerning his farmland:

> Q. Okay. Now, moving in 2023 to the cash rent structure, was that also important to [Ward], that change – changing from crop-share to cash rent?
>
> A. [Ward] was very insistent on that change.
>
> Q. Okay. And did he have or convey to you some feelings about what would be an appropriate cash rent basis for that property?
>
> A. He did.
>
> Q. Okay. And those opinions or recommendations that he conveyed to you, do you believe they were reasonable?
>
> A. I do.
>
> Q. Okay. Now, over the past 18 months . . . have you also had discussions with [Ward] about solar lease, natural gas easement, some other opportunities involving his real property?
>
> A. Yes, we have.
>
> Q. [H]as [Ward] conveyed to you his strong opinions or his thoughts regarding those matters?

A. He has.

Q. Okay. And would you, in your training and experience, consider some of those contracts to be particularly sophisticated agreements?

A. I would say so, yes.

Q. Okay. And in your interactions with [Ward], has he had any difficulty understanding the nature of those agreements or the consequences for his property?

A. He seems to understand it well.

Q. Okay. And in those discussions and the opinions that he's conveyed to you, do you feel like they've been reasonable?

A. I do.

[¶20] The Ward submitted evaluative reports conducted by Dr. Juli Nevland, PhD, and Dr. Nicole Norheim, PsyD. Dr. Nevland, a clinical and forensic psychologist, conducted a cognitive psychological evaluation of the Ward in January 2022. Her diagnostic impression of the Ward was that he had "Unspecified neurocognitive disorder, Mild, Without Behavioral Disturbance." She noted that his "independent functioning skills are relatively intact at this time. However, he does exhibit some difficulties in following written instructions and could benefit from an Occupational Therapy (OT) evaluation, to determine if he needs any OT interventions that would enable him to continue living independently in his own home." She further recommended he utilize "visual reminder aids," continue taking his blood pressure medication as prescribed, and reassess his performance in 10-12 months if he experiences "future difficulties related to self-care or cognitive functioning." Dr. Norheim, a clinical neuropsychologist, performed a neuropsychological evaluation on the Ward in March 2023. Her diagnostic impression of the Ward was that he suffers from cognitive dysfunction (mild cognitive impairment), but noted that his "presentation does not appear to be indicative of a frontotemporal dementia syndrome." (Emphasis omitted.) Dr. Norheim recommended memory

compensation strategies and a re-evaluation in one year. Neither psychologist recommended a guardianship.

[¶21] The Ward's guardian LSS and the guardian ad litem supported termination of the guardianship. LSS noted that "[d]uring our time working with [the Ward], there has not been any record indicating any concerns with [his] living arrangements, health, or decision making."

[¶22] This case is unlike *Guardianship of M.E.*, where we concluded the ward, M.E., failed to establish a prima facie case for restoration to capacity and termination of the guardianship. 2017 ND 121, ¶ 18. In *M.E.*, the ward relied solely on her psychologist's progress notes, which indicated that "M.E.'s judgment is mildly impaired, her insight is impaired and she does not show any cognitive impairment," and stated that she "had been diagnosed with delusional disorder, but that diagnosis was questioned, M.E. was tested as part of the psychologist's work-up and found to have no clinical impairment and her diagnosis was changed to generalized anxiety disorder." *Id.* at ¶ 16. The visitor's report in *M.E.* indicated "M.E. has less memory of the months before her hospitalization due to the medication overdose and medication induced delirium, she shows a lack of insight and judgment into her financial matters, she requested money for another recent scam and she indicated she would not accept any type of help with her medications if the guardianship was terminated." *Id.* at ¶ 17. "The visitor recommended some type of guardianship remain in place due to M.E.'s lack of insight and judgment about her medications and finances." *Id.*

[¶23] Here, the Ward, guardian, guardian ad litem, conservator, the Ward's wife L.N., and individuals close to the Ward all supported termination of the limited guardianship. "If the party bearing the burden of proof presents evidence strong enough, if uncontradicted, to support a finding in her favor, that party has made a prima facie case." *Guardianship of M.E.*, 2017 ND 121, ¶ 10. Based on this evidence, we conclude the Ward established a prima facie showing that he is no longer incapacitated.

[¶24] The district court relied on the testimony and reports of its expert examiner, Dr. Swenson, in concluding the Ward failed to make a prima facie showing that he is no longer incapacitated. The Ward argues the court improperly appointed and elicited testimony from Dr. Swenson under the review process and in opposition to his petition for termination. Therefore, we review whether the court had statutory authority to appoint Dr. Swenson, request his reports, and allow him to testify.

[¶25] Upon filing of the initial petition for the appointment of a guardian, the district court shall "appoint an expert examiner to examine the proposed ward." N.D.C.C. § 30.1-28-03(3). "The expert examiner shall examine the proposed ward and submit a written report to the court." N.D.C.C. § 30.1-28-03(5). "In determining whether appointment of a guardian is appropriate, the court shall consider the reports ordered by the court under this section from a guardian ad litem, visitor, and an expert examiner. The court, guardian ad litem, petitioner, or proposed ward may subpoena the individual who prepared and submitted the report to appear, testify, and be cross-examined." N.D.C.C. § 30.1-28-03(7). "The proposed ward has the right to present evidence, and to cross-examine witnesses, including the court-appointed expert examiner and the visitor." N.D.C.C. § 30.1-28-03(8). These are the procedures governing a petition for appointment of a guardian of an incapacitated person. Under the review hearing process, "If it is recommended that the guardianship continue, the court may appoint a *guardian ad litem or visitor, or both*, in accordance with section 30.1-28-03." N.D.C.C. § 30.1-28-04(5) (emphasis added). The review process, however, does not provide the court statutory authority to reappoint an expert examiner. Therefore, the court acted without statutory authority in reappointing Dr. Swenson.

[¶26] Under the guardianship termination statute,

> Before removing a guardian, accepting the resignation of a guardian, or on finding that the ward is no longer incapacitated and ordering the guardianship terminated, the court, following the same procedures to safeguard the rights of the ward as apply to a petition

> for appointment of a guardian, may send a *visitor* to the residence of the present guardian and to the place where the ward resides or is detained, to observe conditions and report in writing to the court.

N.D.C.C. § 30.1-28-07(3) (2022) (emphasis added). This statute provided the district court express authority for only the appointment of a visitor, not an expert examiner. Section 30.1-28-07, N.D.C.C., was amended effective August 1, 2023, adding in relevant part subsections 4 and 5. *See* 2023 N.D. Sess. Laws ch. 308, § 10. Under N.D.C.C. § 30.1-28-07(4) (2024), "Before terminating or modifying the guardianship, the court shall find by a preponderance of the evidence that the ward is no longer incapacitated, no longer incapacitated to the same extent as the ward was when the original guardianship order was made or last reviewed by the court, or that it is in the best interests of the ward that the duties and authority of the guardian be modified." Under N.D.C.C. § 30.1-28-07(5) (2024), "In deciding whether to terminate or modify a guardianship, the court may require a report by and consider the recommendations of an expert examiner." In the order challenged on appeal and at the joint review and termination hearing, the court cited these 2023 amendments to N.D.C.C. § 30.1-28-07. Prior to August 1, 2023, this finding of incapacity by a preponderance of the evidence and grant of discretionary power to the court to "require a report by and consider the recommendations of an expert examiner" in termination proceedings did not exist.

[¶27] The Ward's petition for termination was filed on March 31, 2023, before the 2023 amendments were in effect. Therefore, we must review whether the district court retroactively applied the 2023 amendments, and if so, whether such application was appropriate in this case. "Whether a statute applies retroactively is a question of law." *Senger v. Senger*, 2022 ND 229, ¶ 10, 983 N.W.2d 160. "Questions of law are fully reviewable on appeal." *Id.*

[¶28] "A statute is applied retroactively if it applied to an action that arose before the effective date." *Senger*, 2022 ND 229, ¶ 11. Retroactive application of a statute is generally only appropriate when the Legislature declares it retroactive:

In order for a court to retroactively apply a statute, the statute itself must generally contain language expressly declaring the statute to be retroactively applied. N.D.C.C. § 1-02-10 (providing "no part of this code is retroactive unless it is expressly declared to be so"); *see also Klein* [*v. Klein*], 2016 ND 153, ¶ 12, 882 N.W.2d 296 (holding statutes cannot be applied retroactively without specific legislative direction); *Larson v. Norheim*, 2013 ND 60, ¶ 10, 830 N.W.2d 85 (applying prior version of statute that was in effect at the time the action commenced); *Sorenson v. Felton*, 2011 ND 33, ¶ 9, 793 N.W.2d 799 (same); *Berdahl* [*v. Berdahl*], 2022 ND 136, ¶ 6 n.1, 977 N.W.2d 294 (applying version of N.D.C.C. § 14-05-24(1) at time of commencement). However, laws conferring benefits may be excepted from the general rule on retroactive application. [*Smith v.*] *Baumgartner*, 2003 ND 120, ¶¶ 11-15, 665 N.W.2d 12. Nothing in the statute or the legislative history suggests the amendments were intended to apply retroactively. The district court erred by not applying the version of N.D.C.C. § 14-05-24(1) in effect at the time of commencement of the divorce action.

*Senger*, at ¶ 11.

[¶29] Here, the 2023 amendments to N.D.C.C. § 30.1-28-07, effective August 1, 2023, were applied to a petition for termination that was filed on March 31, 2023. Therefore, the district court retroactively applied the amended statute. Neither the amended statute nor the legislative history indicates the 2023 amendments are to be applied retroactively. *See* 2023 N.D. Sess. Laws ch. 308; N.D.C.C. § 30.1-28-07 (2024); *see generally* S.B. 2224, 68th N.D. Legis. Sess. (2023), https://ndlegis.gov/sites/default/files/resource/68-2023/library/sb2224.pdf (providing legislative history). The court erred in retroactively applying the 2023 amendments, instead of applying the statute as it read when the Ward petitioned for termination. At the time of petitioning for termination, N.D.C.C. § 30.1-28-07(3) (2022) did not give the court statutory authority to reappoint an expert examiner in the termination proceedings, or request an evaluative report and testimony. We conclude the court erred in appointing an expert examiner beyond the original petition for appointment of a guardianship and therefore erred in considering Dr. Swenson's report and testimony in the termination proceedings or under the review proceedings.

12

## C

[¶30] After the Ward establishes a prima facie case, the guardian has the burden of proving by clear and convincing evidence that the Ward remains an incapacitated person. *Guardianship of M.E.*, 2017 ND 121, ¶ 15. Guardian LSS, however, supported the termination of the guardianship. Therefore, there was no opposing party advancing this burden. Even assuming the district court has an independent role in viewing the evidence to determine whether by clear and convincing evidence that the Ward remains an incapacitated person, after disregarding evidence from Dr. Swenson, we conclude as a matter of law the record does not show by clear and convincing evidence that the Ward remains an incapacitated person. Having concluded the expert examiner evidence was improperly admitted and considered in the termination proceedings, the only remaining support in favor of incapacity was the visitor's May 2023 amended report and the court's own observations of the Ward while he was testifying, noting it "observed impairments to the Ward's executive functions, consistent with Dr. Swenson's testimony." These observations alone do not amount to clear and convincing evidence of incapacity and otherwise rely on Dr. Swenson's testimony. Similarly, the visitor's May 2023 amended report, although not relied on by the court in its analysis, stated it recommended continuation of the guardianship in light of the expert examiner's opinion. Two months earlier, the visitor recommended no further guardianship. Because the visitor's May 2023 recommendation relies upon the expert examiner's opinion, without any further reasoning, and the court did not rely upon the visitor report, we conclude it does not provide clear and convincing evidence of the Ward's lack of capacity.

[¶31] Given the lack of evidence in the record opposing termination, we conclude as a matter of law the Ward is not a "person who is impaired by reason of mental illness [or] mental deficiency . . . to the extent that [he] lacks capacity to make or communicate responsible decisions concerning [his] matters of residence, education, medical treatment, legal affairs, vocation, finance, or other matters, or which incapacity endangers [his] health or safety." N.D.C.C. § 30.1-26-01(2). Therefore, we conclude the district court erred in finding the Ward remains an incapacitated person, reverse the order denying the Ward's petition for termination, and order the limited guardianship terminated.

13

[¶32] Because we reverse the district court's order denying the petition for termination, and order the limited guardianship terminated, further review of the proceedings under N.D.C.C. § 30.1-28-04(5) is unnecessary to our decision.

V

[¶33] We have considered the remaining arguments and conclude they are either unnecessary to our decision or without merit. The order denying the Ward's petition to terminate his limited guardianship and extending the limited guardianship is reversed. The limited guardianship is terminated.

[¶34]  Jon J. Jensen, C.J.
Lisa Fair McEvers
Douglas A. Bahr
Daniel S. El-Dweek, D.J.
William A. Neumann, S.J.

[¶35]  The Honorable Daniel S. El-Dweek, D.J., and the Honorable William A. Neumann, S.J., sitting in place of Crothers, J., and Tufte, J., disqualified.